GASKINS, J.
 

 hln this tort suit brought by an oilfield worker, the defendant/oilfield contractor whose employee allegedly injured the plaintiff appeals from the trial court’s granting of an exception of no cause of action in favor of the oil company against whom it filed a third-party demand for indemnification. Mike Rogers Drilling Company, Inc. (“Rogers”), the defendant/oilfield contractor, contends that the trial court incorrectly applied the provisions of the Louisiana Oilfield Anti-Indemnity Act, which was designed to protect oilfield contractors, to instead penalize it by denying it indemnity under the terms of a negotiated contract with the oil company. We affirm the trial court judgment.
 

 FACTS
 

 The plaintiff, Samuel Silverman, Jr., was an employee of BJ Services Company, which had been hired by Bass Enterprises Production Company (“Bass”) to provide services on an oil well Bass had drilled in Caddo Parish. Bass had also contracted with Rogers to perform other services on the oil well.
 

 The drilling bid proposal and daywork drilling contract between Bass (as “Operator”) and Rogers (as “Contractor”) included the following relevant provisions:
 

 Paragraph 14.9
 

 Operator’s Indemnification of Contractor: Operator shall release contractor of any liability for, and shall protect, defend and indemnify Contractor from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith....
 

 |2Paragraph 18
 

 GOVERNING LAW: The Contract shall be construed, governed, interpreted, enforced and litigated, and the rela
 
 *1101
 
 tions between the parties determined in accordance with the laws of Arkansas.
 

 In July 2005, Silverman allegedly sustained a knee injury when a hoist operator employed by Rogers dropped a cement head that pinned Silverman’s knee against the derrick. In June 2006, Silverman filed suit against Rogers for the injuries he allegedly sustained due to the negligence of its hoist operator. In August 2008, Rogers filed a third-party demand against Bass. It alleged that at the time of the accident it was operating under its contract with Bass which provided for Bass to indemnify Rogers against claims by Bass’ employees or contractors, including agents, consultants or subcontractors.
 

 In October 2008, Bass filed an answer and a third-party demand, as well as peremptory exceptions of no cause of action and prescription. Bass alleged that the indemnity provision sued upon was in violation of La. R.S. 9:2780 and against public policy. It also asserted a third-party demand against BJ Services for its role in the accident and sought indemnification from it pursuant to the contract between them. As to its exceptions, Bass again asserted violation of the provisions of La. R.S. 9:2780 on the exception of no cause of action and untimely filing of suit under La. C.C. art. 3492 and La. C.C.P. art. 1067 on the exception of prescription.
 

 The exception of no cause of action was argued and submitted on May 4, 2009. The trial court issued reasons for judgment sustaining the exception on May 6, 2009. The court found that La. R.S. 9:2780 was | ^.applicable to Rogers and Bass and that the statute prohibited the language in contractual provision 14.9 requiring Bass to indemnify Rogers as contrary to public policy. Also noting that under La. C.C. art. 3540, contractual choice of law controls except to the extent that law contravenes the public policy of the state, the court found paragraph 18 of the contract stating that Arkansas law applied was unenforceable. Since the third-party claim by Rogers was a pure claim for indemnification and was predicated on two contractual provisions violative of Louisiana public policy, the trial court concluded that Rogers had no cause of action against Bass. Judgment in conformity with these reasons was signed the same day, dismissing Rogers’ third-party demand with prejudice. In a supplemental judgment, the court certified the prior judgment as a final appealable judgment.
 

 Rogers appealed. The plaintiff filed a brief stating that he takes no position on the issue on appeal.
 

 LOUISIANA OILFIELD ANTI-INDEMNITY ACT
 

 Law
 

 In reviewing a trial court’s ruling sustaining an exception of no cause of action, the appellate court conducts a
 
 de novo
 
 review because the exception raises a question of law and the trial court’s decision is based only on the sufficiency of the petition.
 
 Gipson v. Fortune,
 
 45,021 (La.App.2d Cir.1/27/10), 30 So.3d 1076;
 
 Wakefield v. Kyle,
 
 44,317 (La.App.2d Cir.5/13/09), 12 So.3d 468.
 

 La. R.S. 9:2780, which is known as the Louisiana Oilfield Anti-Indemnity Act (“LOAIA”), provides, in relevant part:
 

 14A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null
 
 *1102
 
 and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
 

 B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indem-nitee.
 

 C. The term “agreement,” as it pertains to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, as used in this Section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, including but not limited to drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, plugging, or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.
 

 The starting point for interpretation of any statute is the language of the statute itself.
 
 Dejoie v. Medley,
 
 2008-2223 (La.5/5/09), 9 So.3d 826. When a law is clear and unambiguous, and its application does not lead to | r,absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. See La. C.C. art. 9; La. R.S. 1:4;
 
 Dejoie v. Medley, supra.
 

 Where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences.
 
 Freechou v. Thomas W. Hooley, Inc.,
 
 383 So.2d 337 (La.1980). When the language of a law is susceptible of different meanings, however, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examination of the context in which they occur and the text of the law as a whole.
 
 Louisiana Smoked Products, Inc. v. Savoie’s Sausage and Food Products, Inc.,
 
 96-1716 (La.7/1/97), 696 So.2d 1373.
 

 Discussion
 

 Rogers argues that the LOAIA should not prevent a small oilfield contractor (like
 
 *1103
 
 itself) from receiving contractual indemnity from an oil production company/operator (like Bass) under a contract to be pei’formed in Louisiana. Rogers maintains that it — not an oil company like Bass — is one of the “certain contractors” that the LOAIA was designed to protect. As the operator of the well site where the plaintiff was injured, Rogers asserts that Bass was the principal in the relationship between it and Rogers and that Rogers essentially “worked for” Bass. In its reply brief, Rogers points Rout that Bass has sought the same contractual indemnity in its third-party demand against BJ Services. It further contends that the trial court decision violated the original legislative purpose of the LOAIA.
 

 Bass argues that under the clear and unambiguous wording of La. R.S. 9:2780, any indemnity clause contained in any agreement pertaining to an oil well which required the indemnitor to indemnify the indemnitee for the indemnitee’s own negligence is null and void as against the public policy of Louisiana. Since the damage sued upon here was allegedly caused by Rogers’ hoist operator, Bass asserts that the trial court properly found that paragraph 14.9 was such a prohibited indemnity clause.
 

 As noted above, the starting point for judicial interpretation of a statute is not its legislative history but its wording. Our examination of the statute reveals that it clearly prohibits “any provision” which would mandate that an indemnitor indemnify an indemnitee in a situation involving damages for death or bodily injury which was caused by the negligence of the in-demnitee or its employee. Such is the case here. The allegations of the plaintiffs petition assert that his injury was caused by the negligence of Rogers’ employee. Nowhere in the record have we found any assertion of negligence on the part of Bass. Thus, it appears that under the clear and unambiguous wording of the LOAIA, the provision in the contract between Bass and Rogers is void and unenforceable.
 

 Because we are unable to construe the wording of the statute as being ambiguous and susceptible of different meanings in the instant case, we do not reach the legislative intent of the LOAIA.
 

 ^CONFLICT OF LAW
 

 Law
 

 La. C.C. art. 3540 states:
 

 All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 8537.
 

 La. C.C. art. 3537 provides:
 

 Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
 

 That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of
 
 *1104
 
 protecting one party from undue imposition by the other.
 

 Discussion
 

 Rogers contends that since it is an Arkansas company and Bass operates out of Texas, Louisiana and Arkansas, the parties to the contract at issue had “no significant reason” to desire the application of Louisiana law. It argues that there is no violation of public policy in requiring an oil company to contractually indemnify an oilfield contractor. As a result, the contractual choice of law provision here is valid and enforceable.
 

 On the choice of law issue, Bass stresses the following factors: the plaintiff is a Louisiana resident; the contract at issue covered a rig located in Louisiana; the plaintiff was injured on the rig in Louisiana; all work | pursuant to the contract was performed in Louisiana; the plaintiff was the employee of a Louisiana-based company; Bass has many connections to Louisiana, i.e., offices, operations and employees; and there is no allegation of any negligence against Bass. To the extent that Arkansas law would allow an indemnitee to be reimbursed for his agent’s negligence, Bass maintains that it is against the public policy of Louisiana and should be disregarded pursuant to La. C.C. art. 3540.
 

 In oral argument, counsel for Rogers essentially conceded that Arkansas law would apply only if the LOAIA was found to be inapplicable. Because we find that application of the LOAIA is appropriate in the instant case, we agree with the trial court’s conclusion that the contract’s selection of Arkansas law is against public policy and thus unenforceable under La. C.C. art. 3540.
 

 CONCLUSION
 

 We affirm the judgment of the trial court sustaining the exception of no cause of action filed by Bass Enterprises Production Company. Costs of this appeal are assessed against the appellant, Mike Rogers Drilling Company, Inc.
 

 AFFIRMED.