# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 20-174

MACRO COMPANIES, INC.

VERSUS

DEARYBURY OIL & GAS, INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20184283
HONORABLE JULES D. EDWARDS III, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

**AFFIRMED.**

Thomas J. Bernard
David C. Eppling
Staines, Eppling & Kenney
3500 N. Causeway, Suite 820
Metairie, LA 70002
(504) 838-0019
COUNSEL FOR DEFENDANTS/APPELLEES:
    Florida Marine Transporters, LLC
    Kenneth R. Pullen

**Charles A. Mouton**
**Mahtook & Lafleur, L.L.C.**
**Post Office Box 3089**
**Lafayette, LA 70502**
**(337) 266-2189**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dearybury Oil & Gas, Inc.**

**Robert D. Felder**
**Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards, LLP**
**810 S. Buchanan Street**
**Lafayette, LA 70501**
**(337) 237-1660**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Macro Companies, Inc.**

**PICKETT, Judge.**

The plaintiff filed suit asserting claims for breach of contract and detrimental reliance against three defendants to recover a commission it claims to be owed. It now appeals the trial court's judgment granting the defendants' motions for summary judgment and dismissing its claims.

## FACTS

On September 20, 2017, Hurricane Maria made landfall on Puerto Rico. The storm left the area in desperate need of fuel for emergency services. The Federal Emergency Management Agency (FEMA) contacted Macro Companies, Inc. (Macro), to supply five million gallons of fuel. Pursuant to FEMA's need, Macro sought to purchase fuel and sell it to FEMA, and arrange for its transportation to Puerto Rico. In an effort to provide the fuel services, Macro contacted Kenneth R. Pullen at Florida Marine Transporters, LLC (FMT) for assistance in purchasing and transporting the fuel. Mr. Pullen identified Dearybury Oil & Gas, Inc. (Dearybury) as a source for Macro's fuel purchase.

Macro was already working with FEMA setting up a diesel fuel distribution plan on Puerto Rico to supply hospitals, nursing homes, and water plants. Shortly after it initiated negotiations with FMT and Dearybury to purchase and transport fuel, Macro decided it was not in its best interest to proceed with FEMA's request. Macro did not, however, walk away from the negotiations. Instead, Macro and Dearybury agreed Dearybury would sell fuel directly to FEMA, and it would pay Macro a five-cent commission on the sale. Before deciding not to contract with FEMA, Macro also negotiated with FMT to transport frac tanks to Puerto Rico to implement the distribution of the fuel at different ports on the island.

Dearybury then began negotiating with FEMA to sell it the five million gallons of fuel Macro originally sought from it. FEMA solicited public bids for the fuel service contract. FEMA awarded Dearybury a contract (the contract) for the fuel and storage services "not to exceed $19,633,500.00." Pursuant to the Federal Acquisitions Regulations (FAR), specifically, 48 C.F.R. 52.205-3, the contract contained a provision prohibiting Dearybury from paying a contingent fee to a third party for assistance in obtaining the contract, and Dearybury refused to pay Macro the five-cent commission. Macro filed suit against Dearybury, FMT, and Mr. Pullen, asserting breach of contract and detrimental reliance claims to recover the commission it negotiated with Dearybury. Macro asserted that FMT and Mr. Pullen acted as Dearybury's agents in its negotiations with Dearybury and that it relied to its detriment on their actions and representations allegedly made on Dearybury's behalf. FMT answered the suit and asserted a counterclaim against Macro to recover monies it allegedly incurred preparing for Macro's anticipated contract with FEMA.[1]

In April 2019, Macro filed a motion for summary judgment, seeking to have some of FMT's claims against it dismissed. The trial court granted the motion, and FMT appealed the trial court's judgment. Another panel of this court determined it did not have jurisdiction to consider the appeal because the judgment did not dismiss any of FMT's claims. Thereafter, the defendants filed motions for summary judgment, citing FEMA's contingent fee prohibition in the contract and seeking to have Macro's claims dismissed. Macro filed another motion for summary judgment, seeking to have FMT's claims against it dismissed.

---

[1] After suit was filed, FMT filed a motion to remove the suit to federal court. The motion was denied, and the matter was remanded to the trial court. Thereafter, FMT filed an answer.

After a hearing, the trial court granted the motions for summary judgment and dismissed all the parties' claims. Macro, FMT, and Mr. Pullen appealed.[2]

## ASSIGNMENTS OF ERROR

Macro assigns two errors with the trial court's granting summary judgment dismissing its claims against Dearybury, FMT, and Mr. Pullen:

1. The trial court erred in granting summary judgment on Macro's breach of contract claims, considering that fuel is a "commercial item" to which the FAR clause at issue does not legally apply, and further considering extensive evidence showing why the FAR clause does not apply to Macro's claims (or why, at the very least, there are issues of fact).

2. The trial court erred by granting summary judgment dismissing Macro's detrimental reliance claims, when detrimental reliance had not been raised in Defendants' summary judgment motions.

## SUMMARY JUDGMENT

Appellate courts review summary judgments de novo. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). It is favored and must be construed to accomplish this purpose. *Id.* Summary judgment should be granted, if the parties have had the opportunity to conduct "adequate discovery" and the evidence shows there is "no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The mover has the burden of proof. La.Code Civ.P. art. 966(D)(1). When, as here, the adverse party will have the burden of proof at trial, the mover must show that an essential element to the adverse party's claim is lacking. *Id.* The adverse party must then "produce factual support sufficient to establish" that a

---

[2] FMT's appeal of the trial court's dismissal of its claims against Macro is addressed in *Macro Companies., Inc. v. Dearybury Oil & Gas, Inc., et al*, 20-254 (La.App. 3 Cir. 2/ /21), ___ So.3d ___.

genuine issue of material facts exists or "that the mover is not entitled to judgment as a matter of law." *Id*. The allegations or denials in the adverse party's pleading will not defeat the motion. La.Code Civ.P. art. 967(B).

"When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute and the sole issue before us is a question of law as to the correct interpretation of the statute at issue." *Milbert v. Answering Bureau, Inc.*, 13-22, p. 8 (La. 6/28/13), 120 So.3d 678, 684. Pursuant to the rules of statutory interpretation, "we are bound to a strict interpretation of the plain language of the statutory provisions which are before us." *Id*.

## DISCUSSION

### *Are Macro's Claims Prohibited by the Contract?*

In their motions for summary judgment, Dearybury, FMT, and Mr. Pullen assert the contract prohibits Macro from collecting a contingent fee for any assistance it may have provided Dearybury in obtaining the contract. Macro argues the trial court improperly applied the prohibition without considering the facts surrounding the contract and because it is for the purchase of a commercial item; therefore, the contingent fee prohibition clause has no application here.

The contract contained the following provision:

(a) The *Contractor warrants that no person or agency has been employed or retained* to solicit or obtain this contract upon an agreement or understanding *for a contingent fee*, except a bona fide employee or agency. For breach or violation of this warranty, the Government shall have the right to annul this contract without liability or to deduct from the contract price or consideration, or otherwise recover, the full amount of the contingent fee.

(b) Bona fide agency, as used in this clause, means an established commercial or selling agency, maintained by a contractor for the

purpose of securing business, that neither exerts nor proposes to exert improper influence to solicit or obtain Government contracts nor holds itself out as being able to obtain any Government contract or contracts through improper influence.

Bona fide employee, as used in this clause, means a person, employed by a contractor and subject to the contractor's supervision and control as to time, place, and manner of performance, who neither exerts nor proposes to exert improper influence to solicit or obtain Government contracts nor holds out as being able to obtain any Government contract or contracts through improper influence.

Contingent fee, as used in this clause, means *any commission*, percentage, brokerage, or other fee that is *contingent upon the success that a person or concern has in securing a Government contract*.

Improper influence, as used in this clause, means any influence that induces or tends to induce a Government employee or officer to give consideration or to act regarding a Government contract on any basis other than the merits of the matter.

48 C.F.R. 52.203-5 (emphasis added).

The statute plainly states its purpose is to protect the Government against improper influences by scrutinizing and limiting the hiring of an intermediary on a *contingent basis* to secure Government contracts. Thus, the prohibition is intended to restrict "how the contract between the parties may be structured in an effort to prevent corrupt practices." *CapitalKeys, LLC v. Ciber, Inc.*, 875 F.Supp.2d 59, 65 (D.D.C. 2012). The covenant also seeks to distinguish influence peddlers from genuine intermediaries who provide legitimate services and benefits to potential contractors by allowing contractors to engage bona fide employees or agencies on a contingent fee basis. 48 C.F.R. 52.203-5.

Macro argues the defendants' arguments that its claims that are prohibited by 48 C.F.R. 52.203-5 lack merit because 48 C.F.R. 3.404 excepts contracts for

5

"commercial items," such as fuel, from the contingent fee prohibition. Section 3.404 states:

> The contracting officer shall insert the clause at 52.203-5, Covenant Against Contingent Fees, in all solicitations and contracts exceeding the simplified acquisition threshold, other than those for commercial items . . . .

Macro asserts that the term "commercial items" is defined to include fuel. *See* Federal Register Vol. 84, No.91/Friday, May 10, 2019/Proposed Rules, pg. 20607.

The defendants urge this argument is not properly before this court on appeal because Macro did not argue it to the trial court as contemplated by Rule 1–3 of the Uniform Rules–Courts of Appeal. Rule 1–3 limits appellate court review to "issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise."

Macro contends it did present this claim to the trial court and identifies pages in the record to support its argument. Our review of the cited pages show, however, that counsel for Macro made general arguments that the FAR do not apply to the facts herein because they are meant "to prevent lobbying" and, focused on the fact that it was not acting as a lobbyist.

Macro also argues the defendants' reliance on *Adams v. Lori Heaphy & Assoc.*, 14-580 (La.App. 3 Cir. 12/17/14), 155 So.3d 170, in support of its arguments that it did not present the commercial item/fuel argument until appeal is misplaced. In *Adams*, the claimant filed suit against the court reporter who recorded and transcribed his deposition. He asserted complaints about the court reporters' formatting of his deposition, urging that it was defaced in his 1008 claim, his affidavit, his opposition to the defendant's motion for summary

6

judgment, and in oral argument to the trial court. Unlike *Adams*, Macro referenced nothing remotely involving commercial items and, specifically, fuel, until appeal. We find Macro's general references to FAR in the context of lobbying insufficient notice of this new defense and conclude Macro did not present this specific issue to the trial court.

Moreover, as the defendants point out, Section 3.404's use of the term "shall" mandates that the contracting officer include the Covenant Against Contingent Fees in all contracts . . . *other than those for commercial items*," but it does not mandate that the contracting officer not include the covenant in contracts in which fuel is purchased. Macro has not shown this interpretation to be incorrect. Furthermore, the defendants point out that the contract is for fuel, as well as transportation to and storage of the fuel at Puerto Rico. For these reasons, we find the interest of justice does not clearly require that we consider Macro's arguments on this issue.

Macro next argues the trial court erred in concluding that the contingent fee provision of the contract prohibits Macro from enforcing the contract against Dearybury, arguing that the facts surrounding the negotiations should be considered in determining the merits of the defendants' claims. It relies on *Troutman v. S. Ry. Co.*, 441 F.2d 586 (5th Cir. 1971), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81 (1971)); where an attorney/lobbyist filed suit to enforce a contingent fee contract against his client after he successfully obtained the relief sought by the client. In *Troutman*, an attorney sued to collect a legal fee for his services in obtaining an audience with President Kennedy and requesting his involvement in the Interstate Commerce Commission's pending enforcement of increased rates for transporting grain shipments. The attorney was successful, and the rates were not

increased, which benefitted his client. *Troutman* did not deal with a plaintiff seeking to collect a contingency fee for his assistance in securing a federal contract that prohibited such fee. Accordingly, it has no application here.

Section 52.203-5(b) excepts only bona fide agencies or employees from the contingent fee prohibition and specifies the criteria for determining who is a bona fide agency or employee. Macro does not contend and has not shown that it falls within this exception. Regardless, Macro argues the facts here show it did not engage in conduct the prohibition is meant to prevent.

The defendants cite *CapitalKeys,* 875 F.Supp.2d 59, and *Quinn v. Gulf & Western Corp.*, 644 F.2d 89 (2d Cir. 1981), wherein the courts held that contingency fee contracts entered in violation of government procurement regulations were unenforceable, in support of their motions. The facts in *CapitalKeys* are similar to the facts here: the plaintiff, who was not a contractor in the business of securing business, engaged in a temporary relationship with the defendant that resulted in the award of a single government contract. The court determined that even though the plaintiff did not use personal influence, its fee contract with the defendant was unenforceable because the plaintiff's payment was contingent on the defendant being awarded the contract. The court rejected the plaintiff's argument that the contract should be upheld because "it did not use improper means in helping secure [the defendant's] sale," finding that was of no moment because: "'the corrupting tendency' of contingent fee agreements, not the actual use of improper means, justifies voiding the agreement[]. *Noonan v. Gilbert*, 68 F.2d 775, 775 (D.C.Cir.1934)." *CapitalKeys*, 875 F. Supp. at 64.

8

Finding the reasons in *CapitalKeys* persuasive, we conclude the trial court did not commit legal error in holding that Section 52.203-5's prohibition applies to Macro's claims and dismissing them.

The trial court also dismissed Macro's claim of detrimental reliance against FMT for the same reason. Macro contends this claim was not put at issue in the defendants' motion for summary judgment and should not have been addressed by the trial court. The defendants' motions for summary judgment sought dismissal of Macro's claims but did not specifically address its claims for detrimental reliance.

Pursuant to La.Code Civ.P. art. 927(B), the trial court or appellate court can notice on its own motion the plaintiff's "failure to disclose a cause of action . . . to institute the suit[.]" In *Silverman v. Mike Rogers Drilling Co.*, 45,119 (La.App. 2 Cir. 4/14/10), 34 So.3d 1099, *writ denied*, 10-1128 (La. 9/17/10), 45 So.3d 1049, the court of appeal affirmed the trial court's conclusion that because the plaintiff's claim was predicated on contractual provisions that violated Louisiana public policy, the plaintiff had no cause of action against the defendant.

"An obligation cannot exist without lawful cause." La.Civ.Code art. 1966. "The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy." La.Civ.Code art. 1968. Accordingly, the trial court did not err in considering whether Macro's claims for detrimental reliance were void because they violate public policy. *Silverman*, 34 So.3d 1099; *see also, Domingue v. Dickinson*, 611 So.2d 796 (La.App. 3 Cir. 1992). Furthermore, federal law prohibits Macro's claims for a contingent fee. Therefore, the cause of Macro's detrimental reliance claims

9

violates public policy, and the claims are void. The trial court's dismissal of Macro's detrimental reliance claims is affirmed.

## CONCLUSION

For these reasons, the trial court's judgment dismissing Macro Companies, Inc.'s claims against Dearybury Oil & Gas, Inc., Florida Marine Transporters, LLC, and Kenneth R. Pullen is affirmed. All costs associated with Macro Companies, Inc.'s claims against Dearybury Oil & Gas, Inc., Florida Marine Transporters, LLC, and Kenneth R. Pullen are assessed to Macro Companies, LLC.

**AFFIRMED.**